UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE MARANO,<br><br>       Plaintiff,<br><br>- against -<br><br><br>THE METROPOLITAN MUSEUM OF ART<br><br>       Defendant. | Case No. 1:19-cv-08606 (VEC) |

**MEMORANDUM OF LAW IN RESPONSE TO ORDER TO SHOW CAUSE**
**RE: INAPPLICABILITY OF FAIR USE DOCTRINE**

i

**PRELIMINARY STATEMENT**

This is a willful copyright infringement action involving a major museum's unauthorized use of a copyrighted photograph of rock n' roll star Eddie Van Halen (the "Photograph").

Plaintiff Lawrence Marano ("Plaintiff" or "Marano") is a Florida -based professional photographer with decades of experience as a "Rock n Roll" photographer.  Defendant Metropolitan Museum of Art ("Defendant" or "MMA") is a sophisticated purveyor of copyrighted works which operates a website at www.metmuseum.org and a brick-and-mortar museum at The Met Fifth Avenue, 1000 5th Ave, New York, New York 10028.  According to MMA's website, MMA charges admission to visit the art gallery on Fifth Avenue where the Photograph is displayed: $25 for adults; $17 for seniors; $12 for students.

MMA displayed Plaintiff's registered Photograph in its art gallery and on its website without authority from the copyright holder.  While MMA claims to have permission from Eddie Van Halen to use the Photograph, Mr. Van Halen is not the copyright owner of the Photograph; he is only the subject matter depicted therein.

The fair use defense is objectively unreasonable given that there is no transformative effect when a secondary user republishes the Photograph to merely show what it depicts, which in this case is an electric guitar used by Van Halen in concert.  Exhibit B to the Complaint [Dkt. #1-2] shows that MMA is using the Photograph to merely show what is depicted in the image, namely a fanciful electric guitar played by Eddie Van Halen.  MMA has not transformed the image in any way, it has not been used for purposes of news reporting about the image, or for commentary or criticism.  There have not been any aesthetic alterations to the image. MMA has used the Photograph for the exact same purpose as it was created: to show Van Halen playing his unique electric guitar.

Defendant's unauthorized use also usurped a fully functioning licensing market for the work as Plaintiff is in the business of licensing his iconic photographs. If Defendant's practice of shoplifting photographs without authority from the copyright holder were permitted, it would allow every museum to free-ride off the labor of that author's copyright, and charge admission to boot, thereby frustrating the Copyright Act's purpose of maximizing the quantity and quality of works available to the public. As such, the fair use defense should be dismissed as matter law.

## ARGUMENT

### THE FAIR USE DEFENSE SHOULD BE DISMISSED AS FRIVOLOUS

A court "may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyrighted work." *Harper & Row v. Nation Enterprises*, 471 U.S. 539, 560 (1985). As set forth below, examination of the statutory factors demonstrates that Defendant's secondary use of the Photograph does not constitute fair use.[1]

**A.     THE FIRST FACTOR WEIGHS HEAVILY AGAINST FAIR USE**

The first factor under 17 U.S.C. § 107(1), which addresses the manner in which the copied work is used, is the "heart of the fair use inquiry." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006). Courts within the Second Circuit examine at least two sub-factors to determine the purpose and character of use, including whether the secondary use is (1) transformative; and (2) for commercial purposes. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004).

**(1)     Defendant's Secondary Use is NOT Transformative**

---

[1] Section 107 of the Copyright Act sets out four factors to consider in determining whether a defendant's use of a copyrighted work is a fair use. These are "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

2

The fair use doctrine "allows for new transformative works that further the public discourse and the free exchange of ideas in order to promote science and the arts." *See Campbell v. Acuff– Rose Music, Inc.*, 510 U.S. 569, 579 (1994). The central purpose of the inquiry is to determine whether "the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Ringgold v. Black Entertainment Television, Inc.*, 126 3d 70, 79 (2d Cir. 1997) (citations omitted).

As demonstrated below, Defendant's use was not transformative because Defendant did not report on any political or social controversy that arose because of the very existence of the Photograph itself. Nor did the MMA transform the original purpose of use or message behind the Photograph. Defendant merely used the Photograph to show what it depicts: Eddie Van Halen playing his unique electric guitar.

    **(a)**    ***MMA's Use is Simply for Show and Did Not Report on Any Controversy that Arose Because of the Photograph Itself***

A photograph may be transformed where "the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft*, 2017 WL 5032993, at *6. Thus, "a depiction of a controversial photograph might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the photograph." *Id.* (*citing Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000) (fair use found where salacious photographs of Miss Puerto Rico Universe were published by newspaper to comment on the political controversy surrounding the existence of the photographs and their impact on the beauty queen's qualifications to retain the crown); *Konangataa v. Am. Broadcasting Companies, Inc.,* No. 16-CV-7382 (LAK), 2017 WL 2684067, at *1 (S.D.N.Y. June 21, 2017) (fair use found where publishers reported on social controversy surrounding a

father's lack of discretion in posting a live-streaming video that graphically depicted the birth of his child)).[2]

In contrast, no transformation exists where the image is merely used "as [an] illustrative aid[]" to depict the subjects featured in the Photograph.  *See, e,g.*, *Barcroft,* 2017 WL 5032993, at *6 ("CMG's articles did not comment on, criticize, or report news *about the Images themselves*; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. CMG's argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law.").[3]

Here, like the cases in *Otto*, *Barcroft*, *Gossip Cop* and *Psihoyos* where fair use was rejected, Defendant used the Photograph to merely show what is depicted in the image. On its face, Defendant's website [Dkt. #1-2] does nothing more than describe the subject matter depicted in the Photograph.[4]

### (b)     *Defendant Has <u>Not</u> Transformed the Original Intended Use of the Photograph; Nor Altered Its Meaning*

"[U]se of copyrighted material that 'merely repackages or republishes the original is unlikely to be deemed a fair use' and a 'change of format, though useful' is not transformative." *Associated Press v. Meltwater U.S. Holdings*, 931 F.Supp.2d 537, 551

---

[2] The reason why *Nunez* and *Konangataa* constitute fair use is because the media publisher in each case reported on a political or social controversy that arose because of the copyrighted photograph.  *Accord Otto*, 345 F.Supp.3d at 428.

[3] *See also Gossip Cop*, 196 F.Supp. at 404-405 (not transformative where the secondary use of "photograph seems intended as a general illustration of the [celebrity] couple . . . [and] Defendant [does not] comment or report on the images in question . . .); *Psihoyos*, 1998 WL 336655, *3 (defendant's "use is not transformative, because its piece uses the photo to show what it depicts."); *Otto*, 2018 WL 6510801, *8 ("the use of an image solely to illustrate the content of that image, in a commercial capacity, has yet to be found as fair use in this District.")

[4] Unlike the cases in *Nunez* and *Konangataa,* where the publishers reported on a public controversy sparked by the very existence of the images, Defendant here failed to offer any commentary or criticism directed at the copyrighted works at issue. Accordingly, there can be no transformative effect as a matter of law.

(S.D.N.Y. 2013) (*quoting Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 108 & n. 2 (2d Cir. 1998) (citation omitted)).  A secondary use has "no transformative effect [where the article] display[s] the Images in the same manner and for the same purpose as they were originally intended to be used." *Barcroft Media,* 2017 WL 5032993, at *6; *see also Psihoyos,* 1998 WL 336655 at *3 (rejecting fair use defense where purpose of secondary use was to display it "for precisely a central purpose for which it was created").

Here, the Photograph depicts Eddie Van Halen playing his guitar. [Dkt. #1-1]  Plaintiff created the Photograph for the purpose of showing what Van Halen looks like in performance. Likewise, MMA used the Photograph to merely show Van Halen and his guitar.

Further, Defendant did not transform the original meaning behind the Photograph, which convey the message that Van Halen is a groundbreaking and unorthodox musician. *See Otto,* 345 F.Supp.3d at 426 ("It would be antithetical to the purposes of copyright protection to allow media companies to steal personal images and benefit from the fair use defense by simply inserting the photo in an article which only recites factual information—much of which can be gleaned from the photograph itself.").

**(2)     Defendant's Use is Commercial Rather Than Non-Profit**

The fact that Defendant used the Photograph for a commercial purpose also weighs against a finding of fair use. *Psihoyos*, 1198 WL 336655, at *3 (*citing Campbell*, 510 U.S. at 583-84).  The "crux of the profit/nonprofit distinction is . . . whether the user stands to profit from the exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.  Here, there can be no dispute that Defendant charges patrons admission to view Plaintiff's photograph on Fifth Avenue.  Regardless of whether MMA is a

5

501(c)(3) organization, it is still running a commercial business. After all, MMA could admit its patrons at no charge and collect money from contributions and donations.

**B.    THE SECOND FACTOR WEIGHS AGAINST FAIR USE**

The second factor examines the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts consider "(1) whether the work if expressive or creative, with a greater leeway being allowed a claim of fair use where the work is factual or information, and (2) whether the work if published or unpublished." *Blanch*, 467 F.3d at 256. "Photographic images of actual people, places and events may be as creative and deserving of protection as purely fanciful creations." *Monster Communications, Inc. v. Turner Broadcasting*, 935 F.Supp. 490, 494 (S.D.N.Y. 1996).

Here, the Photograph is creative in nature as it is the product of a professional photographer with many years experience in licensing his photographs. Moreover, in creating the Photograph, Plaintiff exercised a personal and creative choice in the selection of camera equipment, wide angle lens, perspective, angle, lighting and exposure. Plaintiff's original take on the subject matter renders the images "as creative and deserving of protection as purely fanciful creations." *Monster Comm.,* 935 F.Supp. at 494.

**C.    THE THIRD FACTOR WEIGHS AGAINST FAIR USE BECAUSE DEFENDANT PUBLISHED A FULL-COLOR, FULL-SCALE REPRODUCTIO OF THE IMAGE WITHOUT ALTERATION**

The third factor bearing on fair use is "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The question is whether "the quantity and value of the materials used are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The Court should consider whether the portion taken is "essentially the heart" of the copyrighted expression. *NXIVM Corp.*, 364 F.3d at 480 (citation omitted). The "most relevant" question for this factor is whether the infringer has taken "no

more" than is necessary. *Infinity Broadcast Corp.*, 150 F.3d at 110. "[T]he more of a copyrighted work that is taken, the less likely the use is to be fair." *Id.* at 109.

As a quantitative matter, Defendant has taken the entire full-color Photographs and displayed them in full-scale. This fact alone weighs against fair use. *See Associated Press*, 931 F.Supp.2d at 558 ("appropriation of a copyrighted work in its entirety weighs against a finding of fair use"). As a qualitative matter, Defendant has used more of the copyrighted works than was necessary to accomplish its purpose of news reporting. *See Rogers*, 960 F.2d at 311. The Photograph was reproduced by Defendant in full color without any visible modification or alteration. Defendant's wholesale reproduction of the Photograph, without any aesthetic alteration, demonstrates the works' qualitative value. *See Harper & Row*, 471 U.S. at 565 ("the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.").

**D.    THE FOURTH FACTOR WEIGHS AGAINST FAIR USE BECAUSE THERE WAS ACTUAL MARKET HARM AS WELL AS HARM TO THE POTENTIAL MARKET**

The final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).[5] As demonstrated below, Defendant's secondary use impaired both the actual and potential market for the Photograph.

As a threshold matter, the Court may presume market harm because Defendant's secondary use constituted a mere duplication of Plaintiff's original photographs. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984) (holding that

---

[5] This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Ringgold*, 126 F.3d at 80-81 (*citing Campbell*, 510 U.S. at 590 (quotation omitted)).

7

"every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright"). "A presumption of market harm "makes common sense[ ] when a commercial use amounts to mere duplication of the entirety of an original." *Campbell*, 510 U.S. at 591.[6]

Defendant's secondary use impairs the actual market for the Photograph because there was a fully functioning market demand for Plaintiff's work. *See Associated Press*, 931 F.Supp.2d at 559 ("Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee") (*citing Harper & Row*, 471 U.S. at 566 n. 9).

Defendant's unauthorized use clearly supplanted the market in which Plaintiff had a reasonable expectation to earn licensing revenue. *See, e.g., Fitzgerald v. CBS Broadcasting*, 491 F.Supp.2d 177, 189 (D. Mass. 2007) ("CBS's use of the photographs is paradigmatic of the only market the photographs could reasonably have: licensing to media outlets"); *Otto*, 345 F. Supp. 3d at 432 ("Publishing the Photograph without permission essentially destroys the primary market for its use."). Defendant's secondary use also impairs the potential market for the Photograph because "unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in the substantially adverse impact on the potential market for [licensing of] the original." *Campbell*, 510 U.S. at 590 (internal quotation omitted).[7]

---

[6] Further, under *Sony,* "there is a presumption of market harm [where] Defendant's use of [] photographs were not transformative." *Ferdman v. CBS Interactive, Inc.*, 17-cv-1317 (PGG), 2018 WL 4572241, *19 (S.D.N.Y. Sept. 21, 2018). Here, because MMA's use constituted a mere duplication of Plaintiff's unaltered Photograph and was wholly untransformative, *Sony's* presumption of market harm applies.

[7] "Under section 107, 'potential market' means either an immediate or a delayed market, and includes harm to derivative works." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir.1990); *see also Otto* at *12 ("Because the images are nearly identical, Defendant's unauthorized publication impacts the market for the work - simply put, more supply, less demand. If the practice of using photographs without licensing were to become widespread, 'the market for such images would diminish correspondingly: [i]f media outlets could use such images for free, there would be little or no reason to pay for works.' *Barcroft*, 297 F.Supp.3d at 355.")

8

In sum, all four factors weigh heavily against MMA and thus the fair use dense should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, and for good cause shown, the Court should decline to dismiss Plaintiff's complaint on grounds of fair use.

Respectfully Submitted,
LIEBOWITZ LAW FIRM, PLLC

by: **/richardliebowitz/**
Richard Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

*Counsel for Plaintiff*