UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAWRENCE MARANO,<br><br>                                  Plaintiff,<br><br>   - against –<br><br><br>THE METROPOLITAN MUSEUM OF ART<br><br><br>                                  Defendant. | 1:19-cv-08606 (VEC)<br><br>ECF Case |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

Richard Liebowitz
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
rl@liebowitzlawfirm.com

*Counsel for Plaintiff Lawrence Marano*

1

**ARGUMENT**

**POINT I:** **WHETHER THE MUSEUM'S USE OF THE PHOTOGRAPH WAS COMMERCIAL USE PRESENTS A QUESTION OF FACT FOR THE JURY**

Defendant's motion to dismiss is entirely based on the argument that because Defendant operates a museum which qualifies for tax-exempt status, that it is entitled to exploit whatever copyrighted works it likes without getting authority from the copyright holder or paying a customary licensing fee. This is nonsense.

First, the fact that the museum does not pay taxes means it has more money on hand to pay rights holders. While the Defendant claims that it respects the artistic community, including photographers [Dkt. # 14, p. 6 of 30], it brazenly exploited Plaintiff's protected work without permission. At the very least, if Defendant actually respected the rights of Artists as it claims, then why not pay that Artist the respect of a phone call or e-mail, complimenting him on his work, and asking him for consent to use the Photograph in an largescale exhibit? Just expropriating Plaintiff's work without his permission and then hiding behind a lawyer's *ex post facto* fair use defense does not show respect. It shows brazen entitlement and abject disregard for the exclusive rights enshrined in the U.S. Constitution, [Art. I, Sec. 8, Cl. 8] and Copyright Act, 17 U.S.C. § 106.

Second, Defendant admits that a general admission fee is charged to out of town visitors. [Dkt. #14, p. 16 of 30]. That should be the end of the matter. Defendant has conceded commercial use. The alleged fact that New York State residents, local students, or Museum members don't pay admission (even if true) does not mean that the

museum is not a commercial enterprise.[1]  Of course it's a commercial enterprise: the museum is charging people money to display Plaintiff's copyrighted work.  If the museum's operations were truly non-commercial, it would not be charging people admission to attend.  It does not cost anything to watch PBS, for example.  That channel functions through donations.  Defendant can also operate through donations and voluntary contributions from patrons, but it elects to charge admission instead.  Accordingly, it has crossed over into a commercial enterprise and its 501(c)(3) status cannot be used to argue otherwise.

Defendant once again hides behind its so-called mission to serve the public interest by arguing that it did not receive significant revenues as a result of exploiting Plaintiff's work.  But that issue cannot possibly be determined on the face of the pleadings.  Plaintiff is entitled to discovery on the issue of how many people paid to see Plaintiff's work, how much money was generated, and what the attendance rates were relative to the absence of the exhibition.  To hold otherwise would basically grant museums *carte blanche* access to exploit whatever copyrighted works they like, charge admission, and never pay a proper licensing fee.  That can't be right.

Third, Plaintiff is entitled to discovery as to whether Defendant pays licensing fees to exhibit OTHER photographs or other works of art.  Surely it must.  It can't possibly just take whatever it wants, display it in its museum, and make money from it by charging people admission at the door.  If discovery reveals that the Museum obtains permission or pays licensing fees to other photographers to exhibit their work, then the

---

[1] Moreover, who is actually charged admission is a material fact that cannot be determined on the face of the pleadings.  Plaintiff is also entitled to discovery on the issue of how many patrons are from out of town versus local or students.

fair use defense will be obliterated.

Fourth, Defendant admits that it exploited Plaintiff's photograph for a commercial purpose because it was essentially displayed as a commercial advertisement "to further inform the public that the actual 'Frankenstein' guitar was available for viewing in the Museum as part of the Exhibition." [Dkt. # 14, p. 20 of 30]. They need a license for that.

**POINT II:    THE MUSEUM'S USE OF THE PHOTOGRAPH IS NOT TRANSFORMATIVE**

Defendant's arguments concerning the allegedly transformative nature of the secondary use largely parallel the same argument that pervades Defendant's submission: that because Defendant operates a museum, it can just take whatever it wants without the Artist's permission. And by doing so, it automatically transforms the purpose of the original image because, above all, Defendant operates a museum. It's a circular argument to be sure and, if accepted, would give museums the unfettered right to exploit whatever works it likes without authority or permission from the Creators whose work is enriching the public sphere. After all, without the works of art on display, a museum is just an empty hall.

First, Defendant's attempt to divorce Eddie Van Halen from the Frankenstein guitar that he's playing is absurd. [Dkt. # 14, p. 20 of 30] The only reason why the guitar is on display in Defendant's museum is because it is being played by a Rock 'n Roll celebrity icon. Had the exact same guitar been played in concert by some guitarist from an unknown high school garage band, the Defendant would have had no interest in displaying it at all. The Frankenstein guitar would be meaningless if not held in the hands of Eddie Van Halen. So the purpose of the original photo has not been transformed at all.

The original purpose of Plaintiff was to capture Eddie Van Halen in performance (as opposed to Eddie Van Halen just sitting at a bar).  And because Eddie Van Halen is a guitarist, the whole point of capturing him in performance is to display him playing his eccentric guitar – because that's what his performance is all about.

Second, Defendant's reliance on *Bill Graham Archives* is unavailing because the secondary use there was a *collage* of posters utilized in a biographical timeline.  There is no indication here that Plaintiff's photograph was used as a part of a biographical collage.  Rather, it was displayed as a commercial advertisement "to further inform the public that the actual 'Frankenstein' guitar was available for viewing in the Museum as part of the Exhibition." [Dkt. # 14, p. 20 of 30].  Plaintiff's photograph was used to make more money from out-of-town patrons who paid to see the guitar.  That's not fair use.

Third, there is no question that Plaintiff's photograph has historical value.  The same can be said for any photograph of any Rock n' Roll icon: Janis Joplin, Jimi Hendrix, Jim Morrison, etc.  But that's all the more reason why museums such as Defendant need to obtain the Artist's permission to exhibit their work: because the works appreciate over time.  Certainly, museums must pay exorbitant amounts of money to exhibit historical relics from the ancient Egyptian civilization, precisely because they are of immense value given their historical nature.   Why then, should museums not have to pay to display historical pieces from modern American civilization?

The logic is not adding up.  The older something is, the more historical, the more value.  Plaintiff has a right to be compensated for creating an iconic image that a prestigious museum wants to display for its paying clientele.  The Museum is abdicating its responsibility to the Artistic community by even arguing fair use in this proceeding.  It

should pay the fair price, credit the Artist and establish a protocol moving forward for seeking permission from Artists to display their work to its commercial patrons.

Fourth, Defendant's argument that it commented on the guitar depicted in the image does not qualify as transformative use.  When it comes to photography, there must be some comment or criticism directed at the original copyrighted work itself, i.e. the photograph in question.  *See Barcroft Media, Ltd. v. Coed Media Group, LLC*, No. 16-cv-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017) (holding that comment must be about the photograph itself, not just about what's depicted in the image).

Thus, had the Defendant-museum compiled together several photographs of Van Halen playing the Frankenstein guitar, and then commented on the merits of each photograph, such as the composition, lighting, framing, or angle, and commented on how that photographer's perspective uniquely captured Van Halen and his guitar in performance, there would be a much stronger argument for transformative commentary.  But here, there is no commentary or critique whatsoever directed at Plaintiff's work.  Any comment provided by Defendant is simply directed at the guitar depicted in the image.  But if that argument holds, there would be no copyright protection for *any* photograph in *any* context.

**POINT III:   IN THIS DAY AND AGE, A MUSEUM IS A POTENTIAL MARKET FOR AN ICONIC ROCK N' ROLL IMAGE**

Defendant argues that a museum is a transformative market *per se* because a photographer would not expect to earn licensing fees from a museum.  [Dkt. #14, p. 28].  Once again, this is a question of fact for the jury to decide.

As patrons grow tired of the same abstract modern art exhibits, art museums have increasing turned to popular culture to attract new visitors, especially younger crowds.  It

is not uncommon to see exhibits in traditional museums that are dedicated to iconic 20th century fashion or psychedelic culture (60's Woodstock hippie culture, for example).  As the 60's, 70's and 80's passes into history, the familiar popular culture of those eras have now become worthy of museum display.  But that should not mean that the Artists who captured iconic images from those eras should just surrender their works to the patron-charging museums.

Artists and Photographers have now come to expect that museums want to exploit their culture and place on it display in the guise of "historical artifacts."  That's fine, but they don't get it for free.  Photographers work hard for a living, and the more time that passes, the more valuable their work becomes.  Museums cannot just trample on the rights of Artists under the guise of serving the public, especially when they are charging the public (no different than any commercial movie theater or musical concert).

In any event, all of these issues should remain for trial.  Plaintiff is entitled to discovery to establish whether Defendant's market is a "likely to be developed market" in light of museum's transition to displaying American popular culture.

## CONCLUSION

For the foregoing reasons, Defendant's attempt to dismiss this case on the face of the pleadings should be DENIED and the case should proceed on the merits.

Respectfully Submitted,

LIEBOWITZ LAW FIRM PLLC

by: **/richardliebowitz/**